## 2941. SMITH v. THE STATE.

1. The alleged newly discovered evidence is immaterial and would not probably produce a different result on a second trial.
2. No error of law is complained of, and there is evidence to support the verdict.

DECIDED NOVEMBER 29, 1910.

Accusation of larceny; from city court of Sylvester—Judge Williamson. September 17, 1910.

The plaintiff in error was convicted of simple larceny, and, his motion for a new trial being overruled, he brings error. The indictment specifically charged that the larceny was of the personal goods of the prosecutor therein named, to wit, "a $20 gold certificate, the same being lawful money of the United States  .  . of the value of $20." The motion for a new trial is based on the general grounds and the ground of alleged newly discovered testimony, the alleged newly discovered testimony being, in substance, that of two bank cashiers, who made affidavits that the description of the $20 gold certificate given by one of the witnesses for the State was incorrect, in that this witness described the $20 gold certificate which he had seen in the possession of the defendant as having "a big 20 in one corner and two Xs in the other corner," it being asserted by the affiants that "gold certificates issued as lawful currency of the United States do not contain, as a part of their form or design, a double X in any corner thereof or on any part of the side thereof," and that this evidence shows that the subject of the larceny, as described by the one witness for the State as having been seen by him in the possession of the defendant, was not and could not have been a lawful gold certificate of the United States.

The evidence in support of the allegations of the indictment may be substantially stated as follows: The prosecutor testified, that

on a day in the early part of November, on a Monday afternoon, he lost a $20 gold certificate in the town of Poulan; that he was not educated, and that he could not read anything except figures, and that his reason for saying that it was a $20 gold certificate was that it was a yellow-back bill, in appearance like other gold certificates that he had handled and which had the figures 20 on it; that he had handled money six or seven years, and, from his experience, he was positive that the bill lost was lawful money of the United States; that this $20 bill was paid to him that day by the cashier or the paying teller at the Cordele National Bank, in payment of a check which he had that day presented to the bank; that this $20 bill was in his pocket with some other bills, fives and tens, but that this was the only $20 bill that he had; that he had used some of his money around Poulan that day, and the last time that he had noticed this particular $20 bill was about two o'clock in the afternoon, at a place in Poulan which was subsequently pointed out to him as the place where a $20 bill conforming to the description of the one which he had lost had been found; that at that particular place, on the day he lost his $20 bill, he had handled some of his money about dark, taking out of his pocket where he had his money a $10 bill to get it changed, and, failing to get the change for the $10, he returned the bill to his pocket; that he did not miss the bill at that time, and did not miss it until next morning, after he had spent the night at home. It was about dark when he took out his $10 bill to get it changed. He further testified, that he had taken several drinks during the day and was slightly under the influence of intoxicants. There were people on the streets of the town of Poulan on the afternoon and night of the day on which he had lost the $20 bill. He did not know where he had lost this money. Subsequently, hearing that the defendant had found a $20 gold certificate at the place where he had the day before pulled out his $10 from his pocket to get it changed, he went to see the defendant and told him that he had lost a $20 bill, and understood that the defendant had found one, and wished to see if it was not his $20 that the defendant had found. The defendant in reply told him that he had not found one, but had found an old certificate, and made the impression on his mind that he had found "one of them old clearing-house certificates like we used to have." He did say

that he had not found any good money, and that he stuck what
he did find in his coat-pocket, to devil Mr. Johnson about it and
make him think he had found some good money, but that after
joking with him a little about it, he threw it down by the barber-
shop where he had found it. "This barber-shop was not very far
from where I was standing that night handling my money, some
five or six feet from where I stood when I handed the money to
Mr. Burges to get him to change it for me." Another witness
(Johnson) testified, in substance, that he and the defendant were
standing together on the sidewalk in Poulan early one morning,
and that the defendant "picked up a $20 bill that had laid there,
all night long and had been rained on a little and was damp."
It was near the barber-shop, where the defendant picked up the
bill, and the witness said to him when he picked it up, "Why
couldn't I have done that? I need it and you don't." "I looked
at it and saw that it had the big 20 in one corner and the two
Xs in the other corner. I saw enough to know that it was
a $20 bill, caught hold of it in my hands and looked at it, but
did not take it out of Dr. Smith's hand. I said, 'Gold certifi-
cate, Doc.'" They then agreed that they would not say any-
thing about the finding of the $20 bill, as "there were lots of
people who would claim a $20 bill who had not lost one." "About
that time an acquaintance, one Press Parker, walked up and I
told him that we were picking up $20 bills there, and he made
some remark as though he thought I had lied about it, and then
Dr. Smith told him that he had picked up one. I said, 'Show it
to him, Doc;' and Dr. Smith said, 'You have commenced talk-
ing already. We agreed not to say anything about it.' . . I
reminded Dr. Smith that old man Stedman [who had lost the
$20 gold certificate] had been there drinking. I saw the old
man drinking and saw him pull his money out of his pocket
a time or two." The witness was positive that the $20 bill picked
up by the defendant was a gold certificate for that amount and
would pass; he was sixty years old and had handled much money.
This witness further testified that three or four days after the
bill was found, the defendant and himself were hunting, and he
asked the defendant if he had heard of any owner of the $20
bill, and he replied that he had not, and then told the witness that
they were both fooled about the bill; that he thought it was a

$20 bill, but that it was not; that it was an old soap wrapper, and in reply I told him that he might lie to some people and make them believe that, but he could not tell me that. He said it was a fact, and that it was then at the house in his coat-pocket, and that if I did not believe it was not a $20 bill, he would show it to me when we got back. He did not show it to me when we got back. That was the last of it, I think." Burgess, the person referred to by the prosecutor as the one to whom he had given a $10 bill to get changed for him, corroborated the testimony of the prosecutor on this subject. One witness was introduced who testified that the general character of the witness Johnson was bad, and that from his knowledge of Johnson's character he would not believe him on his oath. Johnson's character, however, was sustained by nine witnesses.

The defendant, in his statement, denied having picked up the money, and stated, that there was not a word of truth in the statement of the witness Johnson; that instead of a $20 bill, he had picked up "one of those cigar certificates," and had said to Johnson, "See here, I like to have found some money;" and that there was nothing else said about it. He denied the testimony of Johnson as to the conversation between them during the hunt, in reference to the $20, and said that he was a good friend of the prosecutor and was a good friend of Johnson, but that Johnson was his enemy and had always fought him, and was a loose talker and unworthy of credit.

*Claude Payton,* for plaintiff in error.

*J. H. Tifton, solicitor,* contra.

HILL, C. J. (After stating the foregoing facts.)

We can not say from a juridic standpoint that the foregoing evidence is not sufficient to support the verdict. The credibility of the witnesses was entirely for the jury, and the testimony of the two witnesses for the State, as to the substantive facts showing the loss of the $20 and its subsequent finding by the defendant, when taken in connection with the contradictory statements which the witness Johnson proves the defendant made to him, would seem to be incriminatory. It is not surprising that the jury thought a "cigar certificate" was not so much in the similitude of a lawful $20 gold certificate as to excite the interest of the finder, or to "fool" two men who had carefully examined it. This statement

of the defendant·was calculated to arouse suspicion and tax credulity. Certainly, it can not be doubted that there was sufficient evidence to have warranted the jury in believing not only that the prosecutor had lost a $20 bill commonly known as a "gold certificate," but that the defendant had found this bill; and therefore we have no right, under the constitutional amendment creating this court, to say that the verdict of the jury was without any evidence·to support it.

Now, as to the alleged newly discovered evidence. Learned counsel for the plaintiff in error contend that the court should take judicial knowledge of the fact that a $20 gold certificate issued by the United States treasury department and which is in circulation as lawful money of the United States does not contain the figure 20 in one corner and XX in the other, and should therefore conclude that the description of the $20, as given by the witness Johnson, clearly shows that the bill found by the defendant was not a $20 gold certificate issued by the government as lawful currency. This court has little knowledge of gold certificates, either individually or judicially, but from an inspection of a $20 gold certificate in the treasurer's office, the judge who writes this opinion knows that a $20 gold certificate has a yellow back, and the figures 20 in each one of the four corners on the face, and that on the back of the bill the figures 20 are printed·in each one of the four corners, and the letters XX are printed on the face of the bill on the left-hand side, not in the corner of the bill, but about midway between the two left corners of the bill. But we do not think that this is material. Witnesses who are familiar with currency issued by the treasury department of the United States, and who know the general description and character of such currency, might not be able to state all the figures and letters printed on it as a part of the design of the various denominations of bills, yet the lack of such specific knowledge would not affect to any material extent the probative value of their testimony. And the fact that the witness Johnson, who had testified positively that the bill found by the defendant in his presence was a $20 gold certificate with a yellow back, and that it had a big twenty in one corner and two Xs in the other corner, is not a material misdescription of a real $20 gold certificate. The only variation in his description of the bill and the bill itself is that

he located the two Xs in one corner of the bill, when in fact the two Xs are between two corners. The material facts in this evidence are that the prosecutor lost a $20 gold certificate which he had gotten from the bank at Cordele. The fact that he had gotten it from a bank is strong evidence that it was lawful currency of the United States. He had this $20 bill in his pocket with other bills, $5 and $10 bills. At a place in the town of Poulan he took out of his pocket a $10 bill to get it changed. The next morning he missed his $20 gold certificate, and, according to the witness Johnson, a $20 gold certificate was found by the defendant near the place where the prosecutor stated that he had taken out his $10 bill to get it changed. It is probable that the jury concluded that this was the place where the prosecutor had lost the $20. The inaccuracies in the description of the bill proved to have been lost, and found at the place where the circumstances indicate that it was lost, are, in our opinion, wholly too inconsequential to justify this court in setting aside a verdict of the jury approved by the trial judge.     *Judgment affirmed.*